PAULINE E. MAIER HANSON vs. EDWIN H. HANSON.

Norfolk.   November 15, 1933. — June 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Marriage and Divorce*, Validity of marriage, Annulment. *Conflict of Laws. Duress. Fraud.*

A probate court in this Commonwealth has jurisdiction under G. L. (Ter. Ed.) c. 207, § 14, of a libel, grounded upon coercion and fraud practised on the libellant, for annulment of a marriage performed in the State of New Hampshire between parties, both of whom then were domiciled here.

Such a libel could not be maintained by a woman where it appeared that, upon discovery before marriage that the libellee had a venereal disease, she stated to him that she wanted nothing more to do with him and asked him to go away, but that, having entered an automobile with him, she was "whisked off" and told that they were going to New Hampshire to be married; that she made no outcry on the way and went through the ceremony, relying on the promise of the libellee that he would give her an annulment the next day; and that there were no sexual relations after the ceremony: the libellant entered into the marriage voluntarily, and was deceived only in thinking that the marriage could and would be annulled; such deception did not go to the essence of the marriage contract.

LIBEL for annulment of marriage, filed in the Probate Court for the county of Norfolk on March 29, 1933.

The libel was heard by *McCoole*, J.   Material facts found by him are stated in the opinion.   By his order, a decree was entered granting annulment "on account of duress practised upon" the libellant.

The libellee appealed.

*M. J. Segal*, (*S. L. Segal* with him,) for the libellee.

*H. J. Smith*, for the libellant.

RUGG, C.J.   This is a libel for the annulment of a marriage.   There is no report of the evidence.   A decree was entered annulling the marriage "on account of duress practised upon said libellant."   The libellee appealed and at his request the probate judge reported the material facts found by him.   G. L. (Ter. Ed.) c. 215, §§ 9, 11.

These findings of fact made upon unreported oral testimony must be accepted as true unless mutually inconsistent or plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. The conclusion and the decree must stand unless not supported by the facts reported. *Ripley* v. *Ripley*, 259 Mass. 26. *Slavinsky* v. *Slavinsky*, *ante*, 28, 32–33.

The facts thus displayed are that the libellant, a resident of Wellesley in this Commonwealth, had known the libellee for about seven months and was in love with him, but her love for him ceased on March 17, 1933, when informed that he had a venereal disease. She thereupon told him that she wanted nothing further to do with him and requested him to go away. Their meeting occurred on March 18, 1933, at the school where she was a pupil. He asked her to sit in his automobile and talk it over. When they were seated he started his automobile, saying that he was going to Somerville. After riding some time, she observed that they were in Lexington. When his attention was directed to that fact, he told her that they were going to Nashua, New Hampshire, to be married, where earlier in the day he had secured a marriage license. He said to her that he would lose his position if she did not marry him, that his salary had been raised on the strength of his approaching marriage, and that he would go through the form of marriage and give her an annulment the next day. She was deceived and believed that this could and would be done. On arriving at Nashua, New Hampshire, they were married. She reached home at four o'clock in the afternoon of the same day and told her parents of the marriage. The libellee was sent for and, arriving the next day, was asked to explain, and was forbidden to come to the house again. The libellee had a venereal disease at one time and there is grave doubt whether he was cured. Her father and uncle knew of this and warned her not to marry him. When told of this she was justified in being apprehensive for her personal safety. She "was deceived both as to his physical condition and his promise of annulment." There were between them "no sexual relations after the ceremony." The

libellee is alleged to be a resident of Boston in this Commonwealth, and his answer admits this allegation.

The trial court had jurisdiction of the libel. Both parties were domiciled in this Commonwealth. Jurisdiction in these circumstances is conferred by G. L. (Ter. Ed.) c. 207, § 14, upon our courts to entertain a libel for the annulment of a marriage even though solemnized out of the Commonwealth. The State of the domicil of parties can refuse to recognize the married status of its citizens who, barred from marriage within its boundaries, attempt to avail themselves of less stringent requirements of another State and there go through the form of marriage in accordance with its laws. *Murphy* v. *Murphy*, 249 Mass. 552. In that case a Massachusetts resident, divorced by his wife in this Commonwealth and before another marriage by him was permitted by G. L. c. 208, § 24, married in Rhode Island and returned to live in this Commonwealth. A petition for separate support was dismissed on the ground that the marriage would not be recognized as valid in Massachusetts and hence the Probate Court was without jurisdiction to enter a decree for separate support. On the other hand, it has been held that the courts of this Commonwealth have no jurisdiction to entertain a petition for annulment of a New Hampshire marriage of parties at all times domiciled in this Commonwealth, where the validity of the marriage was attacked on the grounds that the parties were of such a youthful age that under a New Hampshire statute the marriage "may in the discretion of the Superior Court be annulled." *Levy* v. *Downing*, 213 Mass. 334. In that case it was said: "Under that law this marriage was solemnized, and by that law must the question of its validity be determined. It is plain that under it the marriage is not void, but must stand until and unless the Superior Court of that State in the exercise of its discretion sees fit to annul it." The validity of the marriage in the case at bar does not depend upon the discretion of any foreign court. It is attacked not upon grounds of public policy declared in a statute of either State, but upon the general ground of coercion and fraud exercised over the libellant. In deter-

mining whether the marriage has ever existed, which is the issue upon a petition for annulment, our courts must be governed by the principles of law prevailing in the State where the ceremony took place, but may exercise jurisdiction over the marriage status of persons at all times domiciled within this Commonwealth. A sovereign State has authority in general to decide what marriages between its own citizens it will recognize. It is vested with power to exercise through its courts, with respect to cases where both spouses are domiciled within its borders, jurisdiction to nullify a marriage from its beginning or to dissolve a valid marriage. *Whippen* v. *Whippen,* 171 Mass. 560. *Wright* v. *Wright,* 264 Mass. 453. *Witherington* v. *Eldredge,* 264 Mass. 166, 174. *Cunningham* v. *Cunningham,* 206 N. Y. 341. The wisdom of a uniform rule of this nature is apparent, because parties would be without a forum to decide their cause if the courts of this Commonwealth do not have jurisdiction, since the courts of New Hampshire decline to entertain a petition for annulment of a marriage solemnized within that State between parties at all times domiciled outside that State. *Turner* v. *Turner,* 85 N. H. 249.

Our attention has not been drawn to any statute or decision of the State of New Hampshire touching the subject of duress as affecting the validity of a marriage. Therefore parties have not put themselves in a position to invoke G. L. (Ter. Ed.) c. 233, § 70, as to taking judicial notice of foreign laws. See *Rodrigues* v. *Rodrigues,* 286 Mass. 77, 81, and cases cited. The case is considered as presented by the parties. It is presumed, therefore, that the law of New Hampshire on that subject is the same as that of this Commonwealth. *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187, 192. A careful scrutiny of the facts reported by the trial judge has led us to the conclusion that they do not warrant the inference that the marriage ceremony was a result of duress practised upon the libellant. The reported facts are clear. The libellant made no outcry in any of the numerous villages and cities through which she passed on the way to Nashua. She must have appeared without dissent in the presence of the magistrate who per-

formed the ceremony. She was misled by her belief that the libellee would and could have the marriage annulled the next day. Her action in taking part in the ceremony was voluntary. She had complete freedom in the exercise of her will. Her choice to go through with the ceremony was not the result of fear or compulsion. She was, it is true, "whisked off in an automobile" by the libellee, but there is no indication that she protested or struggled against the drive to New Hampshire, or that her passive acquiescence was caused by fear. She did not ask him to stop, to take her home, or to let her leave him. These facts are not sufficient evidence of duress, such as will lead to an annulment. *Day* v. *Day*, 236 Mass. 362. See *Laffey* v. *Mullen*, 275 Mass. 277. Her apprehension for her personal safety, after learning of the libellee's physical condition, was in no way a factor leading to the marriage in which she participated of her own free will.

The libellant further contends that the decree of the Probate Court should be sustained on the ground that the marriage was induced by the fraud of the libellee even though the facts do not show duress; she invokes the rule that a right decision will be supported even though a wrong reason is given. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503. It is doubtful whether that principle is applicable to a case like the present. The decree was founded on a definite ground; to that the report of material facts was directed. The argument, however, will be considered. She points out that the object of the libellee in going through the marriage ceremony was to retain his position and increase in salary and that the inescapable inference is that he never intended to consummate the marriage. These facts do not bring the case at bar within the decision of *Anders* v. *Anders*, 224 Mass. 438, where the fraud of a woman in marrying the libellant in order to secure a married name, with the intent never to perform any one of her duties as a wife, was held cause for an annulment. There the fraudulent purpose was concealed. In the instant case the libellee made his purpose clear. He never misled the libellant into thinking that the marriage would be consummated. An executory contract may be invalidated with less difficulty than a fully executed one.

The trend of the authorities is that annulment of an unconsummated marriage may be secured more readily than in a case where the parties have cohabited. *Smith* v. *Smith,* 171 Mass. 404. *Richardson* v. *Richardson,* 246 Mass. 353. *Arno* v. *Arno,* 265 Mass. 282. Fraud of such nature as to invalidate a marriage must go to its very essence. Our decisions are perhaps somewhat more strict in upholding the marriage status when attacked on grounds of fraud than are the authorities in some other jurisdictions. The statement made in 1862 in *Reynolds* v. *Reynolds,* 3 Allen, 605, that "The law, in the exercise of a wise and sound policy, seeks to render the contract of marriage, when once executed, as far as possible indissoluble," has been quoted with approval repeatedly. In *Chipman* v. *Johnston,* 237 Mass. 502, the libellant was deceived by a man who assumed a false name when he married her, but annulment was denied. In *Heath* v. *Heath,* 85 N. H. 419, a petition for annulment was dismissed notwithstanding fraudulent representations by one party that he was sober, industrious and sexually virtuous. His characteristics were quite the reverse, and in fact he had been convicted of adultery. There was no fraud even of such character in the present case. The existence of the libellee's venereal disease was disclosed prior to the ceremony. It could be inferred from the facts that the libellant relied on the libellee's false assurance that the marriage would be annulled. This deception did not go to the essence of the contract. The libellant was, in effect, deceived into thinking that the parties by agreement could have the marriage nullified. Such a mistake of law is no ground for avoiding a contract. In *Clark* v. *Field,* 13 Vt. 460, a marriage, entered into under the mistaken belief by the bride that the ceremony was merely one of engagement and that a later ceremony of marriage would be held in the future, was annulled. That was mistake in not understanding the true purport of the ceremony in which she was taking part. It reached more nearly to the essence of the marriage than do the facts in the present case, where the libellant plainly understood that she was being married but thought that the status thereby established could be overturned on the next day by agreement of the

parties. Marriage is not something to be swept aside lightly. To permit the annulment of a marriage otherwise legal and binding upon mere proof that the parties agreed beforehand to have it annulled would destroy the dignity and lessen the importance of the marriage relation. The decree was not justified by the reported facts.

*Decree reversed.*