WITT, Respondent, vs. WITT, by Guardian *ad litem,* Appellant.

*October 10—November 8, 1955.*

94

For the appellant there were briefs and oral argument by
*E. J. Mueller* of Milwaukee, guardian *ad litem*.

For the respondent there was a brief and oral argument by
*David Beznor Bartell,* attorney, and *Lee B. Bartell* of counsel,
both of Milwaukee.

CURRIE, J.    The issue before us on this appeal is whether
the provisions of sec. 330.18 (4), Stats., are applicable to
an action for annulment of marriage based upon the alleged
insanity of one of the parties at the time of such marriage.
Such statute provides a ten-year statute of limitations with
respect to "An action which, on and before the twenty-eighth
day of February in the year one thousand eight hundred and
fifty-seven, was cognizable by the court of chancery, when
no other limitation is prescribed in this chapter."

In the absence of any special statute conferring power on
the courts to exercise jurisdiction over suits for annulment of
marriage, the chancery courts of America have assumed
jurisdiction in such cases under their inherent equity powers.
3 Nelson, Divorce and Annulment (2d ed.), p. 277, sec.
31.02, states:

"But since ecclesiastical courts have never existed in
America, courts of equity have here assumed to exercise the
power in respect of annulments which was exercised by the
ecclesiastical courts in England until 1858."

As early as 1820, Chancellor James Kent, in *Wightman v.
Wightman,* 4 Johns. Ch. Rep. (N. Y.) 343, annulled a mar-
riage on the ground of insanity of one of the parties.  In his
decision he pointed out that in England the ecclesiastical
court was the appropriate tribunal to try such suits, and that
it was unthinkable that jurisdiction did not exist in some

court in New York over suits of that nature. His conclusion was that jurisdiction formerly exercised by the ecclesiastical courts of England in such cases was properly exercisable by a court of chancery.

The Vermont court in *Clark v. Field* (1841), 13 Vt. 460, held that a court of equity has inherent power to annul a marriage. Later cases holding to the same effect are: *McClurg v. Terry* (1870), 21 N. J. Eq. 225; *Crouch v. Wartenberg* (1920), 86 W. Va. 664, 104 S. E. 117, 11 A. L. R. 212; *Heflinger v. Heflinger* (1923), 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088; and *Estes v. Estes* (1952), 194 Tenn. 96, 250 S. W. (2d) 32, 32 A. L. R. (2d) 730.

This court in *Lyannes v. Lyannes* (1920), 171 Wis. 381, 392, 177 N. W. 683, declared that the power to annul a marriage in Wisconsin is "exclusively of statutory creation" and cannot "be extended by resort to the general equitable powers inherent in the circuit court as a court of equity." However, we do not interpret such declaration as repudiating the principle that courts of equity, in the absence of statute, have the inherent power to annul marriages. What this court decided in the *Lyannes Case* was that, the legislature having by statute specified the grounds upon which Wisconsin courts might annul marriages, such legislative action was intended to be exclusive in character thus negativing the right of the circuit courts, sitting as courts of equity, to grant annulments on additional grounds not specified by such statute.

However, in the instant case we do not have to resort to precedents arising in other jurisdictions to establish that courts of chancery prior to March 1, 1857, exercised jurisdiction to annul void or voidable marriages, in view of the express provisions of ch. 79, sec. 3, Stats. 1849. Such statute provided as follows:

"When a marriage is supposed to be void, or the validity thereof is disputed, for any of the causes mentioned in the two preceding sections [1 and 2], either party may file *a*

*petition or bill in chancery* in the circuit court of the county where the parties, or one of them reside, for annulling the same, and such petition or bill shall be filed and proceedings shall be had thereon, as in the case of a petition or bill filed in said court for a divorce; and upon due proof of the nullity of the marriage, it shall be declared void by a decree or sentence of nullity." (Italics supplied.)

In the recent case of *Zlindra v. Zlindra* (1948), 252 Wis. 606, 32 N. W. (2d) 656, this court held that the provisions of sec. 330.18 (4), Stats., were applicable to divorce actions. The gist of our decision so holding was that at English common law the jurisdiction over divorce actions was exclusively in ecclesiastical courts, but that we have no courts corresponding to the ecclesiastical court; that ch. 79, sec. 8, Stats. 1849, conferred jurisdiction on the circuit courts of the state *"sitting as a court of chancery"* to decree divorces; and that, consequently, divorce actions were *"cognizable by the court of chancery"* on the 28th day of February, 1857.

Inasmuch as actions for an annulment of marriage were triable in our circuit courts sitting as courts of chancery prior to March 1, 1857, the ten-year statute of limitations imposed by such sec. 330.18 (4), Stats., is applicable thereto. As e. ,lained in *Zlindra v. Zlindra, supra,* the legislature's designa ion of the date of February 28, 1857, in sec. 330.18 (4), is because March 1, 1857, is the date the code abolishing the distinction between actions at law and suits in equity went into effect.

Counsel for the plaintiff George J. Witt base their principal argument against the application of sec. 330.18 (4), Stats., to the instant suit to annul a marriage because of the insanity of one of the parties on the following statement appearing in our decision in *Lyannes v. Lyannes, supra* (p. 390) :

"In the void marriage the relationship of the parties, so far as its being legal is concerned, is an absolute nullity from its very beginning and cannot be ratified. It may be ques-

tioned at any time during the life of both, and, with some statutory exceptions (vide sub. (2), sec. 2351 [now 247.02], Stats.), after the death of either or both, and generally whether the question arises directly or collaterally."

The above statement was also quoted by this court in its decision in *Estate of Canon* (1936), 221 Wis. 322, 328, 266 N. W. 918. However, in neither the *Lyannes* nor the *Canon Cases* was the court confronted with any issue of the applicability of the statute of limitations found in sec. 330.18 (4), Stats., and it would have been *obiter dictum* if such statement were deemed to have been made with respect to such an issue. In the *Lyannes Case* the purported marriage to the plaintiff occurred on June 14, 1919, and the decision upon appeal in this court was rendered May 4, 1920; while in the *Canon Case* the marriage took place October 7, 1926, and the wife died A 1gust 4, 1932, and it was held that the husband could not inherit the estate of the wife because of the marriage being void. It surely cannot be assumed that this court in making the above-quoted statement in its opinion in the *Lyannes Case* had any intention of nullifying the express wording of sec. 330.18 (4).

We find no necessity on this appeal of determining whether the marriage which occurred between George J. Witt and Irene Witt on October 14, 1930, was void or voidable. This is because sec. 330.18 (4), Stats., does not distinguish between actions instituted to annul void and voidable marriages.

Nearly twenty-one years elapsed between the marriage of the parties and the institution of the instant action to annul the same. Upon the oral argument respondent's counsel advanced the contention that under no circumstances would the provisions of sec. 330.18 (4), Stats., bar the instant action because George J. Witt did not discover the insanity of Irene Witt until approximately nine years after they were married and he was in military service in World War II from November 2, 1942, to September 4, 1945. Therefore, if such two

periods are to be excluded in computing the period during which the statute operated, it is apparent that the instant action was commenced in time.

There can be no question under the provisions of sec. 330.32, Stats., but that the approximate three-year period in which Witt was in military service must be excluded in computing the limitation period. However, we cannot agree with the contention advanced as to excluding the period from 1930 to 1939 during which he claims he had not discovered his wife's insanity. The cause of action for annulment arose upon the date of the marriage on October 14, 1930, and not when Witt discovered the insanity. Sub. (7), sec. 330.19, covering actions for relief on the ground of fraud, is an example of a statute of limitations which starts to run not when the wrongful act giving rise to the action occurs, but when it is discovered. The legislature has failed to expressly provide a similar exception in the case of causes of action for annulment of marriage and we have no right to read such an exception into sec. 330.18 (4) by implication.

We, therefore, have no difficulty in determining that the instant action is barred by the ten-year statute of limitations provided in sec. 330.18 (4), Stats.

While the brief of the guardian *ad litem* raises additional issues we find it unnecessary to consider the same in view of our conclusion that the action is barred by the statute of limitations.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.