2. MARRIAGE—ANNULMENT—INHERENT EQUITY JURISDICTION.
   Equity has inherent jurisdiction to annul a marriage, such court not being prohibited by law from doing so (Const 1908, art 7, § 10).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Courts § 61, and 1958 Cumulative Supplement; § 124 et seq.; 30A Am Jur, Judgments § 629 et seq.
[2, 4, 7] 35 Am Jur, Marriage § 60.
[3, 10] 35 Am Jur, Marriage § 111.
[5] 50 Am Jur, Statutes §§ 323, 324.
[6] 35 Am Jur, Marriage § 88.
[8] 35 Am Jur, Marriage §§ 89, 93.
  Meaning of "voluntary cohabitation" within statute relating to annulment of marriage. 26 ALR 1068.
[9] 35 Am Jur, Marriage § 61.

3. SAME—ANNULMENT—JURISDICTION—SUBSEQUENT DEATH OF MENTALLY INCOMPETENT PLAINTIFF WARD.

The jurisdiction to annul a marriage duly conferred upon an equity court by bill filed on behalf of the guardian of the mentally incompetent man, was not lost by the subsequent death of the ward prior to hearing below.

4. COURTS — MARRIAGE — ANNULMENT — JURISDICTION — OVERRULED CASE.

*Romatz* v. *Romatz*, 346 Mich 438, holding that an equity court of this State, even though possessed of jurisdiction of the necessary parties who were at all times domiciled in this State, had no jurisdiction to entertain a bill for annulment of a purported marriage, solemnized in another State, where the pleaded ground of annulment is that one of the involved parties was mentally incompetent and the other party is charged with having fraudulently taken advantage of such incapacity in order to bring about the relation of husband and wife, is overruled, redetermined and decree of annulment affirmed, notwithstanding death of mentally incompetent party.

5. STATUTES—CONSTRUCTION.

Consideration is given to the construction of a statute in State from which the statute was imported.

6. EQUITY — JURISDICTION — ANNULMENT — CONTRACTS — MARRIAGE—FRAUD.

The inherent jurisdiction of an equity court to annul a fraudulent contract includes the right to annul a fraudulent contract of marriage without assuming any general jurisdiction of matrimonial causes.

7. MARRIAGE — ANNULMENT—JURISDICTION—EVIDENCE.

The jurisdiction of equity to annul a marriage for fraud should be exercised with extreme caution, and only on clear, distinct, and satisfactory evidence.

8. SAME—ANNULMENT—CONSUMMATION.

A marriage which has been procured by fraud may be annulled the same as any ordinary contract, except that it cannot be rescinded by the mere consent of the parties and provided that application for annulment be promptly made, and before a consummation of the marriage by voluntary cohabitation.

9. SAME—ANNULMENT—JURISDICTION.

A court having jurisdiction of the domicil of both of the parties to a marriage celebrated in another State has jurisdiction to

annul such a marriage even though such jurisdiction may not be exclusive.

10. SAME—ANNULMENT—REHEARING.

Decree of annulment in former case by guardian of mentally incompetent man against defendant woman, both residents of Michigan, for annulment of marriage performed in Ohio, after dismissal of bill by mental incompetent's heirs for like purpose, is affirmed, the case being treated as having been reheard on *sua sponte* motion for rehearing.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted October 14, 1958. (Docket No. 51, Calendar No. 47,706.) Decided January 12, 1959.

Bill by Nicholas Romatz and 10 other heirs of Anton Romatz against Matilda Winter Romatz for annulment of marriage. Bill dismissed on motion. Plaintiffs appeal. Affirmed, with decision also overruling *Romatz* v. *Romatz,* 346 Mich 438, a similar action instituted during the life of Anton Romatz and decided on jurisdictional grounds, which earlier action is revived, redetermined and decree of annulment affirmed.

*A. Albert Sugar,* for plaintiff.

*Joseph B. Bixler,* for defendant.

BLACK, J. *Barden* v. *Northern Pacific R. Co.,* 154 US 288 (14 S Ct 1030, 38 L ed 992), provides an appropriate introduction to the ensuing confession of error. It follows (p 322):

"It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience."

When an appellate court discovers that a majority of its members have erred, the duty of frank and corrective avowal takes first place in the order of judicial business. With the coming here of this second bill for annulment of Anton Romatz' apparently solemnized Ohio marriage, we descry an egregious mistake, appearing in our unanimous opinion of *Romatz* v. *Romatz,* 346 Mich 438. On that occasion it was erroneously held that a Michigan court of equity—even though possessed of jurisdiction of the necessary parties and even though such parties at all times have been domiciled in Michigan—is without jurisdiction to entertain a bill for annulment of a purported marriage, solemnized in another State, where the pleaded ground of annulment is that one of the involved parties was mentally incompetent at the time and the other party is charged with having fraudulently taken advantage of such incapacity in order to bring about the relation of husband and wife.

Our said misstep was taken on the false premise that equity must find her jurisdiction to annul in legislative enactments granting direct and specific authority;* whereas, and certainly as to cases of annulment distinguished from divorce, it is clear that the jurisdiction is inherent; also that it is "not prohibited by law." (Quotation from article 7, § 10, Const 1908.)

---

* We conclude, on reflective examination of CL 1948, §§ 552.2, 552.3 (Stat Ann §§ 25.82, 25.83) (the provisions of these sections date back without essential change to the revised statutes of 1846), that direct and specific statutory authority to hear and determine the bill considered in *Romatz, supra,* has been present at all times. Nevertheless, and since the question steadily recurs whenever contention is made that equity must exclusively find her powers in explicit legislative enactments, it is proposed that exploration be made of equity's inherent powers, derived as they are from the Constitution and general laws of the State, in order that the presented jurisdictional question be tested with lasting pronouncement. See, to this point of inherent powers of equity, Mr. Justice SMITH's helpful analysis in *Sovereign* v. *Sovereign,* 354 Mich 65.

This brings us to the jurisdictional instrument itself; the bill of complaint filed in behalf of Anton Romatz in his lifetime. If that bill conferred requisite jurisdiction at the time, and we so hold, subsequent events—such as Anton's death prior to hearing below—have not destroyed such jurisdiction (*L'Hommedieu* v. *Smith,* 351 Mich 223).*

The bill considered in *Romatz, supra,* alleged that both parties to the purported marriage were at all times resident of the city of Detroit; that a form of marriage was solemnized between plaintiff Anton Romatz (represented in the case by his guardian), and defendant Matilda Winter Romatz, "before a justice of the peace in the city of Toledo, State of Ohio, on the 26th day of March, 1954;" that said Anton Romatz, at the time of such purported marriage, was a mentally-incompetent person and was later so adjudged (June 1, 1954) by the Wayne county probate court, and that said Anton Romatz, on April 7, 1954, left the defendant's home and "returned to his own home, to live with 2 of his children." The bill, coming to its jurisdictional allegation, averred that the purported marriage "was obtained by fraud" of defendant, charged this way:

"(a) That defendant herein, well knowing of the mental incapacity of the plaintiff, stole him away from his family and cajoled and influenced him, taking advantage of his idiocy and insanity, to permit her to drive him to another State and to go through the ceremony of marriage.

"(b) That the defendant herein, knowing that plaintiff had considerable property, planned and

---

* There is no conflict here with certain authorities which, in specific circumstances, appear as holding that a marriage cannot be attacked' after the death of a party or parties (see annotation, 47 ALR2d 1393). This bill was properly filed in Anton's behalf during his lifetime and the court was jurisdictionally authorized to proceed to final decree.

schemed said marriage in an attempt to obtain the property of plaintiff therein at his death.

"(c) That the following day after said marriage, the defendant herein, engaged an attorney and had certain documents drawn which, had plaintiff signed, would have secured for her a better claim to his estate."

Issues having been joined, the case proceeded to due hearing. At conclusion of such hearing the chancellor found and held:

"The court has heard the testimony of the various witnesses who have been presented here in plaintiff's behalf, numbering more than 10, I believe. All told pretty much the same story; that following his illness on the 6th of October, 1953, his condition became decidedly different. He was a victim of apoplexy at the time. In other words, he suffered a stroke. There was a complete change in his personality as revealed by the witnesses. They told how neat and clean he was before and that subsequently he was very slovenly and indifferent as to his personal appearance, his eating habits changed, he was grossly indifferent to money, treated it very lightly, and seemed to be unconscious of its value. The doctor himself who saw him in March of 1954 believed that he was not competent to handle his own affairs. The record itself is replete with incidents where the plaintiff's personality, without question, had changed, and it was reflected that he was without the mental capacity to recognize this fact.

"This marriage was contracted in Ohio, and I think the court should be guided by the laws of Ohio. Ohio has followed the common law that in order to make a valid marriage, one must have the capacity to contract. In this matter the court is of the considered opinion that the plaintiff at the time he entered into this contract with the defendant was without the mental capacity to contract. Therefore, a good and valid marriage was not performed, and it might be noted here that following the marriage in June, as

a matter of fact the first day of June, 1954, the Honorable Judge Cody declared this man mentally incompetent.

"Therefore, the court does believe that this marriage between the plaintiff and the defendant is void *ab initio* and a decree may be entered to that effect, with costs to the plaintiff."

As *Romatz, supra,* shows, the chancellor's decree was reversed for want of jurisdiction (p 442) to annul "the marriage of an incompetent person when the marriage was performed out of Michigan." Following such reversal the plaintiff heirs of Anton Romatz filed this new bill for annulment. Such new bill is a substantial duplicate of the one filed in behalf of Anton Romatz during his lifetime. It varies from the earlier bill only in respect of new and specific allegation that the subject marriage license was applied for and issued "within less than 5 days from the filing of an application for said license," in violation of a pleaded Ohio statute. Defendant Matilda Winter Romatz moved to dismiss such new bill, assigning principally that same presents a "matter that is *res judicata* between the parties." The successor chancellor granted the motion and entered a decree of dismissal. Appeal having been taken from the decree of dismissal, and a serious cloud having been cast by our previous opinion on the "powers and jurisdiction of the circuit courts in chancery" of Michigan, we move now of our own will to overrule *Romatz.*

*First:* Historically, the jurisdiction of equity came to Michigan from England, after the pattern of New York. By statute, effective in 1830, it was provided in the Empire State that "The powers and jurisdiction of the court of chancery are co-extensive with the powers and jurisdiction of the court of chancery in England, with the exceptions, additions, and limitations created and imposed by the Constitu-

tion and laws of this State." (See detailed discussion, 1 Pomeroy's Equity Jurisprudence (4th ed), §§ 283, 284, pp 531–533, in which the common origin of equity jurisdiction as applied in New York, Michigan and Vermont was noted.)* Eight years later (by part 3, title 1, chapter 2, § 23, of the revised statutes of 1838) the general and presently known jurisdiction of Michigan circuit courts, sitting in chancery, came into being. Our enactment of 1838 was worded the same as quoted from the earlier statute of New York, save only that the words "shall be" were substituted for the word "are". Having matched these time-honored laws, we find that no material amendment of the Michigan statute has been made during the intervening 120 years. The statute reads, today:

"The powers and jurisdiction of the circuit courts and . circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England as existing on March first, 1847, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this State." CL 1948, § 606.4 (Stat Ann § 27.545).

What do these words import, in the way of provided jurisdiction to hear and determine the merits of a bill of complaint such as was filed in behalf of Anton Romatz on July 7, 1954? In the orderly course of progress toward solution of such a problem, the questing briefer turns first to that which comes with the imported statute. He finds immediately the regularly cited case of *Ferlat* v. *Gojon,* 1 Hopkins Ch (NY) 478, 484, 485 (14 Am Dec 554), wherein it was held that a marriage procured by fraud and abduction may be vacated in equity at suit

---

* For current and corresponding treatment of the same subject, see 1 Symons', Pomeroy's Equity Jurisprudence (5th ed), §§ 283, 284, pp 633–635.

of the innocent party.   The chancellor said (pp 556, 557 of Am Dec report):

"The jurisdiction of this court is that of the English chancery, with the various additions which have been made to it by our own laws.   This court has jurisdiction in case of fraud, and especially in all cases of contracts procured by fraud.   In such cases this court effectually annuls the fraudulent contract, adjudges it void, causes it to be delivered up or canceled, or prohibits the parties from claiming any right under it.   Such is the undoubted jurisdiction of this court in other cases of contracts; and if this court has not the same jurisdiction where the contract of marriage has been procured by fraud, it is the only case of a fraudulent contract to which its jurisdiction does not extend.   *   *   *   The jurisdiction of equity in cases of fraudulent contracts seems sufficiently comprehensive to include the contract of marriage, and though this may be a new application of the power of this court, I do not perceive that it is an extension of its jurisdiction.   It would be deplorable that in a case of fraud so gross there should be no adequate remedy; and to give the same relief in this case which this court gives in other cases of contracts procured by fraud, is no assumption of any general    jurisdiction    over    matrimonial    causes: Reeve's Domestic Relations, 206, 207."

We note, before passing to general authority, that the jurisdiction in *Ferlat* was sustained from that which inheres and not from a specific statute granting jurisdiction to hear and determine suits for marriage annulment.   We also observe that *Ferlat* led the way in this country toward establishment of the firm and well-nigh universal rule that a contract of marriage, fraudulently induced or obtained, is as much subject to the immanent power and control of equity as is any contract tainted with fraud.   An early instance of the exercise of such power, in a case not unlike the one before us, appears in *Gillett*

v. *Gillett,* 78 Mich 184, and the following authorities
uniformly tend to sustain the jurisdictional principle
which, on reflective consideration, appears to have
been overlooked by the participating members of
our Court (the writer included) when *Romatz* came
to decision in 1956:

"In this country at an early date courts of equity
assumed independent jurisdiction of suits to annul
marriages on the ground of fraud. This jurisdiction
was expressly rested upon the general power to va-
cate contracts in all cases where they had been pro-
cured by fraud. From this general jurisdiction of
equity a contract of marriage was not regarded as
being excepted, when the assent to it was the result
of artifice or gross fraud." 9 RCL, Divorce and Sep-
aration, § 61, pp 293, 294.

"Questions of jurisdiction and conflict of laws re-
lating to annulment of marriage are closely inter-
related and for that reason are herein treated to-
gether. Jurisdiction of actions or suits for the an-
nulment of marriages is sometimes prescribed or
conferred upon particular courts by statute. In the
absence of statute, the general rule is that courts of
equity have inherent jurisdiction of such suits or
actions." 35 Am Jur, Marriage, § 60, p 222.

"Statutes sometimes expressly confer jurisdiction
upon some court to annul a marriage on the ground
of fraud, but equity has jurisdiction, resting on its
general jurisdiction to set aside contracts procured
by fraud, to annul such a marriage irrespective of
statute, although the jurisdiction of equity to set
aside a marriage for fraud should be exercised with
extreme caution, and only on clear, distinct, and sat-
isfactory evidence." 35 Am Jur, Marriage, § 88, pp
236, 237.

"In the absence of statute, jurisdiction to annul
marriages depends on common-law principles which
are recognized and adopted in equity. * * * and,

even where the jurisdiction is purely statutory, it is regarded as equitable in its nature. Where the statutes authorizing annulment of marriages so provide, or where no statutory limitation has been imposed on the jurisdiction of a court having general equity powers to entertain such suits, a court of equity may take jurisdiction of a suit to annul a marriage where the ground alleged is one on which equity gives relief in respect of contracts generally, namely, in the case of fraud." 55 CJS, Marriage, § 52, p 929.

"Undoubtedly, in the eye of the law, marriage is a civil contract differing from other contracts in the circumstance that it cannot be rescinded by the mere consent of the parties. Being, then, a contract, it seems to follow that, where it has been procured by fraud or duress, it may be set aside by a court whose inherent jurisdiction gives it authority to annul any ordinary contract procured in the same way, provided the application be promptly made, and before a consummation of the marriage by voluntary cohabitation." *Ridgely* v. *Ridgely,* 79 Md 298, 307 (29 A 597, 600, 25 LRA 800).

"Apart from the statute, NJSA, 2A:34-1 (g), equitable jurisdiction to annul a ceremony of marriage for antecedent causes stems from chancery's general authority to grant relief from contractual undertakings induced by fraud. *Lindquist* v. *Lindquist* (1941), 130 NJ Eq 11 (20 A2d 325); *Carris* v. *Carris* (1873), 24 NJ Eq 516; *Akrep* v. *Akrep* (1949), 1 NJ 268 (63 A2d 253)." *Houlahan* v. *Horzepa,* 46 NJ Super 583, 587 (135 A2d 232, 234).

"Divorce is the creature of statute; annulment rests within the inherent power of equity, inherited by it from the ecclesiastical courts of England. Fraud, particularly before consummation, is within the reach of its long arm, and that power is not lost because other grounds are specifically mentioned in the statute. It is a power not conferred by statute but is inherent with respect to all civil contracts void-

able upon grounds recognized by it." *Pretlow* v. *Pretlow,* 177 Va 524, 548, 549 (14 SE2d 381, 387).

"The inherent power of courts of equity to declare a marriage void when procured by fraud or duress has long been recognized in Maryland. *LeBrun* v. *LeBrun,* 55 Md 496, 503; *Wimbrough* v. *Wimbrough,* 125 Md 619 (94 A 168, Ann Cas 1916E, 920)." *Townsend* v. *Morgan,* 192 Md 168 (63 A2d 743, 745, 746).

"In the absence of any special statute conferring power on the courts to exercise jurisdiction over suits for annulment of marriage, the chancery courts of America have assumed jurisdiction in such cases under their inherent equity powers." *Witt* v. *Witt,* 271 Wis 93, 95 (72 NW2d 748, 52 ALR2d 1158, 1161).

Annulment proceedings are not, as said in *Romatz, supra,* "strictly statutory." They inhere in the traditional powers of our circuit courts, sitting in chancery, as in the case of any proceeding in equity designed toward vitiation of a contract for fraud; the only condition being that the court have proper jurisdiction of the parties. *Romatz* should, in consequence, be overruled.

This leaves but 1 question affecting the jurisdiction: Whether the courts of Michigan are possessed of jurisdictional authority—concurrent or exclusive—to annul a marriage contracted according to form in another State; the parties at all times having been resident subjects of Michigan. We turn thereto.

*Second:* The distinctive fact-premise, which to us appears controlling of an otherwise troublesome question stemming from possibly conflicting laws of sister States, is that all of the necessary parties to this proceeding were domiciliary residents of Michigan and that the court below, from the very first, was and now is possessed of jurisdiction *in personam.*

The governing rule is given by the annotator in 128 ALR 61. The annotated subject is that of "Jurisdiction, as between different States, of suit to annul marriage." As will be seen from thorough examination of the excellent brief prepared under such quoted heading, various aspects of this issue of contested jurisdiction have arisen throughout the States and, as subsequent annotations show, have continued to arise since the annotator's brief was prepared in 1940. So far as concerns this case of *Romatz,* and repeating for emphasis that the court below was and is possessed of jurisdiction of requisite parties, we need but refer to the pertinent summations of the mentioned annotator, noting in the way of preface to quotation thereof that such summations have been adopted as the text of 35 Am Jur, Marriage, § 61, pp 222, 223. We adopt, then, the following:

*"Jurisdiction of courts of domicil, where marriage celebrated elsewhere.*

*"a. In general.*

"The authorities both in this country and in England directly or inferentially recognize the jurisdiction of the courts of the domicil to annul a marriage celebrated elsewhere, treating the question as identical with that involved in divorce, without, however, expressly holding (as is held in divorce cases) that the jurisdiction of the domicil is exclusive of that of any other State, particularly that of the place of celebration of the marriage." (p 64 of annotation.)

*"b. Domicil of both.*

"Where the forum of the suit for the annulment is the domicil of both the parties at the time of suit, this presents the clearest situation for the application of the rule that (apart from the question of the exclusive or nonexclusive character of jurisdiction) the court of the domicil of the parties has jurisdic-

tion to annul a marriage celebrated elsewhere." (p 65 of annotation.)

There is no occasion for extended discussion of the copious authorities which support these reasonable conclusions. Of those cited *Hanson* v. *Hanson*, 287 Mass 154 (191 NE 673, 93 ALR 701), supplies specially persuasive reason why the courts are so inclined. Having pointed out that Massachusetts "may exercise jurisdiction of the marriage status of persons at all times domiciled within this commonwealth," the court went on to say (p 157):

"The wisdom of a uniform rule of this nature is apparent, because parties would be without a forum to decide their cause if the courts of this commonwealth do not have jurisdiction, since the courts of New Hampshire decline to entertain a petition for annulment of a marriage solemnized within that State between parties at all times domiciled outside that State."

It is true, as applied to this case of *Romatz,* that Ohio has apparently taken no position that she will or will not accept jurisdiction of a bill to annul a marriage contracted in Ohio between parties at all times domiciled outside Ohio.* Even so, and since we have determined that the jurisdiction of our courts of equity in cases as at bar is concurrent, if not exclusive, it would hardly become us, the high chancellors of this court of conscience, should we insist that citizens of Michigan must seek—without success—relief in the courts of another State before

---

* While it is unnecessary that we decide the question now, we note good reason given in *Turner* v. *Turner,* 85 NH 249 (157 A 532), for holding that equity courts do require residence, if not domicil, of at least 1 party in order that an annulment suit may be maintained. *Turner* is the case cited, in *Hanson* v. *Hanson, supra,* to the point that New Hampshire declines to entertain a petition for annulment of a marriage solemnized in New Hampshire between parties at all times domiciled outside that State.

they may appeal for such relief in the local court-house.

We conclude and therefore hold that the bill submitted in behalf of Anton Romatz was properly filed below; that the chancellor rightfully proceeded to hear and determine the merits of such bill and that he was authorized to find, on the substantially uncontradicted testimony shown in the record, that Anton Romatz, at the time of his apparent marriage to defendant Matilda Winter Romatz, was mentally incompetent and incapable of contracting marriage "by the laws of Ohio." Accordingly, and since the question of jurisdiction only was raised and argued here, we hold that *Romatz* should have been affirmed.

Our Brothers would open the door to new application for rehearing of *Romatz* without committing themselves upon the right or wrong of its jurisdictional declaration. We in turn would have done with further delay of overdue self-correction. Every week and every month an admittedly erroneous decision of a court of last resort is permitted the vigor of apparent life, that decision continues to deceive those who rely on its reports for trustworthy guidance. No power of re-argument, and no amount of research however assiduous it might be, would or could lead to conclusion that *Romatz'* appraisal of equity jurisdiction was right. In these circumstances we would treat *Romatz* (346 Mich 438) as having been reheard on motion of the court and would now affirm Judge Maher's decree.

The *present* case was properly dismissed. We therefore join in affirmance of Judge Ferguson's decree.

SMITH, VOELKER, and KAVANAGH, JJ., concurred with BLACK, J.

CARR, J. (*concurring in affirmance*). The defendant in this case and Anton Romatz were married in the city of Toledo on the 25th of March, 1954, by a justice of the peace of said city. The parties were residents of Detroit and following the marriage returned to that city where they lived for several days in the home of defendant. Anton then left, returning to his former residence where he was living with 2 of his children. On the 1st of June, 1954, a guardian for Anton was appointed by the probate court of Wayne county, and an action was brought thereby seeking the annulment of the marriage. The bill of complaint filed averred that at the time of the marriage Anton was mentally incompetent, and that his consent to the marriage was obtained by fraud. In this respect it was averred that defendant took advantage of the mental incapacity of Anton and influenced him to go with her to the State of Ohio and to enter into the marital relation. It was further alleged that defendant's purpose was to obtain the property of Anton Romatz at his death.

Subsequent to the bringing of the suit the guardian caused his appearance to be entered as next friend for Anton. The latter deceased prior to trial, and the plaintiffs in the instant case were by order of the court joined as parties plaintiff. On the hearing before the circuit judge testimony was offered in support of the allegations of the bill of complaint, and at the conclusion of plaintiffs' proofs both sides rested. Defendant's motion to dismiss was denied and the court disposed of the case on the merits, finding from the evidence before him that Anton was mentally incompetent at the time he went through the marriage ceremony with defendant. Plaintiffs' claim of fraud as the inducement to the marriage was not discussed in the opinion filed, or referred to in the decree which granted plaintiffs the relief sought.

On appeal this Court entered an order reversing and setting aside the decree of the circuit court and dismissing the bill of complaint. The case is reported as *Romatz* v. *Romatz*, 346 Mich 438. The opinion rendered therein by this Court, after referring to various statutory provisions of the State of Michigan relating to divorce and annulment, said (pp 442, 443):

"We do not find authority in any of the above statutes that authorizes a court of equity in Michigan to take jurisdiction for the purpose of annulment of the marriage of an incompetent person when the marriage was performed out of Michigan. Jurisdiction to entertain an annulment suit is governed by the law of the domicile. It follows that the chancery court of Wayne county was without jurisdiction to entertain such a proceeding."

It thus appears that the order entered reversing the decree of the circuit court and dismissing the bill of complaint was based on the conclusion that the jurisdiction of the Michigan courts to determine the controversy was dependent on statutory provisions relating to annulment suits. Motion for rehearing was denied.

Following dismissal of the case instituted by the guardian of Anton Romatz, plaintiffs herein, under date of February 21, 1957, filed their bill of complaint in the instant proceeding, averring therein that they were the legal heirs of Anton Romatz and that as such they had a proprietary interest in his estate. As in the pleading filed by the guardian in the prior suit, it was averred that at the time of the Ohio marriage on March 25, 1954, Anton Romatz was a mentally-incompetent person and incapable of giving his consent to the marriage. The averments of fraud in the first bill of complaint were repeated, together

with the claim that a statute of Ohio requiring application for a marriage license not less than 5 days before the issuance thereof, except on good cause shown, had been violated. With the exception of this reference to the Ohio statute the bill of complaint in the present case is essentially identical with that filed by the guardian in the first suit.

Motion to dismiss was made by counsel representing defendant, based on the dismissal of the first case by this Court in *Romatz* v. *Romatz, supra,* and on the further grounds that the plaintiffs had failed to allege a cause of action in their favor, that the annulment proceeding could not properly be instituted after the death of one party to the marriage, and that plaintiffs were seeking to relitigate matters previously determined. Following argument before the circuit judge hearing the matter the motion was granted. As appears from the opinion filed, the judge concluded that failure to observe the statute of Ohio with reference to the issuance of a marriage license was without merit, that the marriage was at most voidable under the law of the State of Ohio, and that its validity could not be collaterally attacked by the heirs. An order was entered accordingly, and plaintiffs have appealed.

The circuit judge was not in error in granting the motion to dismiss. The primary question at issue as raised by the bill of complaint had reference to the alleged mental incapacity of Anton Romatz to give consent to the marriage. The determination in circuit court of the suit brought by his guardian, and the subsequent holding of this Court, above cited, had reference to such issue. The claim of fraud as set forth in each bill of complaint was premised on the alleged mental condition of Anton and the conduct of defendant in taking advantage thereof in procuring the marriage.

In effect plaintiffs are seeking in this proceeding to challenge the opinion of this Court in the case instituted by the guardian and the order entered dismissing the bill of complaint. Such method of procedure is not permissible. As held in *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District,* 309 Mich 646, 650:

"There cannot be a rehearing under the guise of a new bill of complaint."

The circuit judge was right in his holding, on which the order of dismissal was based, that the bill of complaint filed by plaintiffs in the instant case did not state a cause of action that they were entitled to prosecute. The order dismissing the bill is affirmed, with costs to defendant.

The litigation in question suggests an unusual situation. As noted, this Court held in the guardian's suit that a Michigan court of equity is without jurisdiction to grant annulment of a marriage, solemnized in another State, on the ground of lack of mental capacity of one of the parties. In effect plaintiffs challenge the correctness of that holding. Such challenge, if tenable, should be made directly in the proceeding in which the decision was rendered, that is, in the suit started on behalf of Anton Romatz during his lifetime. In this connection see *L'Hommedieu* v. *Smith,* 351 Mich 223, 229. The matters in issue may not be relitigated in a new suit instituted by the heirs. The equitable relief for which they ask may properly be sought only in the proceeding instituted in 1954. Under the circumstances the order sustaining the action of the circuit court in dismissing the present suit will be entered without prejudice to the right of plaintiffs, if they wish to do so, to seek a reconsideration of the

order of this Court denying a rehearing of the prior case.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

EDWARDS, J., did not sit.