## FITZGERALD *v.* BIXLER.

1. TRIAL—AFFIRMATIVE DEFENSES—ELECTION OF REMEDIES—MOTION TO DISMISS—MOTION FOR DIRECTED VERDICT—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT.

   The affirmative defense of election of remedies which had been properly raised by motion to dismiss which the circuit judge reserved for decision was available to defendant in his subsequent motions for directed verdict and for judgment notwithstanding verdict, where such defense was a legal issue in the case by virtue of the pretrial statement (Court Rule No 37, § 8 [1945]).

2. SAME—MOTION FOR DIRECTED VERDICT—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT.

   A defendant would be barred from moving for a judgment notwithstanding the verdict if he had not previously moved for a directed verdict (Court Rule No 37, § 8 [1945]).

3. ELECTION OF REMEDIES—RETURN OF DEPOSIT—ENFORCEMENT OF CONTRACT.

   Plaintiff in action at law against attorney for return of money she claimed to have deposited with him in connection with purchase of an interest in a tavern was barred from seeking return of the deposit by election of remedy in previously voluntarily participating in chancery suit and seeking to compel transfer to her of interest in such business.

4. SAME—MISTAKE—VALUE.

   The fact that the remedy elected by a party has proved to be of no value does not constitute a mistake relieving the plaintiff of the election made.

   BLACK, J., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 30A Am Jur, Judgments § 303.
[3] 18 Am Jur, Election of Remedies § 31.
[4] 18 Am Jur, Election of Remedies § 24.

Appeal from Wayne; Webster (Arthur), J. Sub-mitted on rehearing June 5, 1962. (Docket No. 2, Calendar No. 47,030.)   Decided October 3, 1962.   Rehearing denied January 11, 1963.

Case by Ann Fitzgerald against George W. Bixler for conversion. Verdict and judgment for plaintiff. On motion for new trial the court, for reasons contained in a motion previously denied, entered judgment *non obstante veredicto* for defendant. Plaintiff appeals. Affirmed.

*John H. Gillis* and *Philip A. Gillis,* for plaintiff.

*Stephen G. Lucky,* for Joseph B. Bixler, administrator of the estate of George W. Bixler, deceased.

SOURIS, J. By our long delayed grant of the last of defendant's many petitions for rehearing of *Fitzgerald* v. *Bixler,* 350 Mich 688, we acknowledge candidly judicial errors requiring self-correction. Unlike *Romatz* v. *Romatz,* 355 Mich 81, in which we acknowledged and corrected a prior erroneous declaration of law, the errors to which we here confess are errors of procedural fact upon which our prior decision was based.[1]

Plaintiff was awarded a jury verdict for $6,000 against defendant, a member of our bar, for conversion of money. After entry of judgment the trial judge, the Honorable Arthur Webster, denied defendant's motion for judgment notwithstanding the verdict based upon election of remedies, waiver, estoppel, and *res judicata.* Defendant then moved for new trial and, after hearing, the judge determined he had erred in denying defendant's earlier motion for judgment notwithstanding the verdict,

---

[1] Since grant of rehearing defendant has died and his estate's administrator has been substituted. For convenience, we will omit further reference to the administrator in this opinion.

set aside the judgment for plaintiff and entered judgment for defendant. Plaintiff appealed following denial below of a motion for rehearing. In her appeal, plaintiff stated the questions involved as follows:

"1. Where one had deposited money with an escrow agent pending transfer of a liquor license to her, does her action against the licensees for specific performance of an alleged agreement to convey the license, which is unsuccessful because of failure to prove an agreement, bar her from recovering the deposit from the escrow agent?

"2. Is the affirmative defense of election of remedy raised timely when it is first asserted before the trial judge after the jury has been sworn and empaneled?

"3. Did the defendant sustain the burden of proof that the plaintiff waived or ratified the defendant's fraudulent conversion to his own use of plaintiff's $5,000 deposit?"

Defendant's counterstatement of questions involved was:

"1. In intervening in the Pinter case and by enforcing her claim to be the purchaser of defendant Swanson's interest in the business, did plaintiff Fitzgerald make an election of remedies thereby estopping her from bringing this action to recover the purchase price paid by her for that interest in the business?

"2. Does the trial court have the right to correct a mistake made by the trial court, where the plaintiff was allowed to file a belated reply to defendant's answer, and the defense of estoppel by election of remedies was raised prior to trial, by motion to dismiss, where the court at that time promised the defendant that it will protect his rights and the record in every respect, and that defendant will be heard in reference to said defense of estoppel by election of remedies?"

Only the second of plaintiff's statement of questions involved was considered in reaching our prior decision. We concluded that defendant's answer failed to plead the affirmative defenses of election of remedies, waiver, estoppel, and *res judicata;* that such matters were first raised after pretrial conference by motion to dismiss filed after the jury was sworn without first amending the answer; and that, consequently, defendant should not have been permitted by the trial judge to raise those new defensive grounds for the first time in his motion to dismiss and again in his subsequent motions for judgment notwithstanding the verdict and for new trial. While it is true that defendant's answer did not plead any of the above mentioned affirmative defenses, inexplicably this Court overlooked the fact that the pretrial statement (reproduced in the record on appeal) included, as part of defendant's claim, a statement of all facts necessary to defendant's use of the defenses of election of remedies and estoppel. It also included a statement that both counsel agreed that proofs might be introduced in support of their respective claims as pleaded and as stated in the pretrial statement without further amendment of the pleadings. The pretrial statement, insofar as it is pertinent to this issue, follows:

*"Statement of Case:*
"This action was started in chancery and subsequently transferred to the law side, and now is a legal action sounding in trespass.

"The plaintiffs [Ann Fitzgerald and her husband, who was later dismissed from the case] contend that on or about January 10, 1949, the plaintiffs herein being desirous of purchasing a 1/2 interest in the bar known as Linc Inn retained the defendant, George Bixler, an attorney at law, to represent them in the transaction; that pursuant to the purchase, the plaintiff Ann Fitzgerald delivered to the defendant,

George Bixler, the sum of $5,000 and received a receipt executed by his secretary, which money was to be held in escrow until such time as title of 1/2 interest in the Linc Inn was placed in the name of the plaintiffs; that she did not receive the 1/2 interest nor was the money ever returned to her although demand was made. She now seeks recovery of the $5,000 plus interest to the date of judgment.

"When the action was transferred to the law side, the case was dismissed as to the defendant William Swanson.

"The defendant, George Bixler, contends and proposes to show that he was not retained by the plaintiffs as an attorney; that he represented one Eugene Sikora, who was desirous of purchasing the 1/2 interest of his partner, William Swanson; that several meetings were held toward such purchase and the defendant Bixler then stated he would not hold any further meetings relative to the purchase until his client Sikora produced the money for the purchase; that subsequently he was told by his client Sikora that his hat-check girl, who was the plaintiff, Ann Fitzgerald, would appear at Bixler's office with the money. Subsequently, the plaintiff, Ann Fitzgerald, came to the office and delivered the $5,000 to the defendant Bixler and received a receipt signed by his secretary; that at a meeting between Sikora and the plaintiff, Ann Fitzgerald, and Swanson, the defendant Bixler was told by his client Sikora that the money was received as a loan from the plaintiff, Ann Fitzgerald, and under the circumstances the defendant Bixler advised Sikora he should execute a promissory note in her favor for the $5,000, which promissory note was delivered to Ann Fitzgerald at the time; that subsequently Sikora purchased the interest of William Swanson, and that the plaintiff, Ann Fitzgerald, was present when the transaction was consummated. Subsequently, financial difficulties were experienced by Eugene Sikora, and the chattel mortgagee, Pinter, who sold the place to Sikora and Swanson, foreclosed on the chattel mort-

gage, joining Sikora and Swanson as defendants. The matter was tried in this court and the plaintiffs interpleaded as defendants in that case, and a decree of this court adjudicated all the rights of the parties therein, including the plaintiffs herein.

"The defendant Bixler contends and maintains that there is nothing due and owing from him to the plaintiffs, and that the plaintiffs are now legally estopped from so claiming due to the position taken in the action tried before Judge Arthur Webster, and secondly, because Ann Fitzgerald was present when the money was turned over and continued employment after Swanson left the business.

"*Issues:*

"The issues are questions of fact and law as outlined above.

"*Pleadings:*

"Counsel indicate they are satisfied with the pleadings, and each concedes that the others, without further amendment to the pleadings, may introduce competent proofs in support of their respective versions of the case as presently pleaded and herein stated. * * *

"*Exhibits:*

"The receipt executed by the defendant Bixler's secretary is admitted without further proof.

"The chancery action tried before Judge Arthur Webster is likewise admitted. [The chancery action referred to is a suit which resulted in decree awarding this plaintiff a 1/2 interest in the Linc Inn for her $5,000 and which is the basis for defendant's claim she elected her remedy.]"

The fact is that the affirmative defenses relied upon by defendant in his motion to dismiss and in his postjudgment motions, including election of remedies, were legal issues in the case by virtue of the pretrial statement. Our prior conclusion that those motions should have been denied because based upon new affirmative defenses was, therefore, erroneous. Mich-

igan Court Rule No 35, § 4 (1945),[2] Wayne circuit's then current local Rule 1(g) of Part 2 (identical to its present Rule 32 [h][3]). See, also, *Kolton* v. *Nassar,* 352 Mich 337, and *Hyma* v. *Hippler,* 365 Mich 127.

Furthermore, defendant's motion to dismiss made at the commencement of trial was based squarely upon the defense of election of remedies. Judge Webster refused to decide the motion at that time and expressly stated to defendant's counsel, on the record, that he would decide the motion later and that defendant's rights in that regard would be protected. When Judge Webster finally granted defendant judgment notwithstanding the verdict, he quoted from the transcript what transpired at the time defendant sought dismissal on the ground of election of remedies and properly concluded that the court had given defendant its assurance that his affirmative defense would "not be foreclosed because of a technical absence of a formal plea of election of remedies."

We now conclude that defendant was entitled to rely upon the affirmative defense of election of remedies, that it was properly raised in his motion to dismiss which Judge Webster reserved for decision, and that he was entitled to raise the defense in his subsequent motions for directed verdict and for judgment notwithstanding the verdict.

Another ground upon which we previously decided the trial judge erred in entering judgment for defendant notwithstanding the verdict was our mistaken belief that the record failed to disclose that a motion for directed verdict had been made by defendant during trial. Had we been right, then of

---

[2] Amended on July 1, 1958, after trial of this case.    352 Mich xv–xvi.

[3] See Honigman, Michigan Court Rules Annotated, 1957 Supp, p 251, and 1959 Supp, p 301.—Reporter.

course failure to move for directed verdict during trial, in this case, would have barred defendant from moving for judgment notwithstanding the verdict. Court Rule No 37, § 8 (1945).[4] *In re Calhoun Estate,* 346 Mich 227, 232.

Our conclusion that no motion for directed verdict had been made during trial was apparently caused by a weird typographical blunder by which two lines of type which should have appeared at the bottom of one page of the calendar entries in the printed record on appeal appeared, instead, at the bottom of the opposite facing page of calendar entries. Unfortunately, the transposed lines of type were the entry for the motion for directed verdict crucial to defendant's subsequent motions. The original typewritten calendar record contains entry of this motion in its proper date sequence and the original motion appears in the file in its proper page-numbered sequence. Furthermore, reference is made to the motion in the trial judge's opinion in which he first denied defendant's motion for judgment notwithstanding the verdict. However, absent reference to that motion in the printed record on appeal at the place in the calendar entries where it should have appeared and absent a copy of the motion in the printed record, we concluded no such motion had been made.

In fairness to counsel for the parties, it should be noted that the statements of questions involved did not require for their resolution reference to the motion for directed verdict and failure to print a copy of it in the printed record on appeal was entirely justifiable. It became important only when this Court injected into the appeal a new procedural issue not claimed or briefed by plaintiff-appellant. It is regrettable, however, that the printed calendar entries were not proofread more carefully by counsel.

[4] As amended. See 335 Mich lxii.—REPORTER.

Had they been, the typographical mistake readily would have appeared and our error certainly would have been avoided.

. It should also be mentioned that not until shortly before we granted rehearing did defendant supply the Court with a transcript, certified by the court reporter, of a portion of the proceedings below from which it appears that the motion for directed verdict was argued to the trial judge and taken under advisement by him.

The net result of all of this is that almost 5 years after our decision, defendant has succeeded in convincing us that we erred on both procedural grounds upon which our prior decision was based and, upon present consideration of the substantive merits of plaintiff's appeal, that our prior order of reversal should be vacated. Judge Webster was right and, on this rehearing, we affirm his judgment for defendant notwithstanding the verdict.

As has been noted earlier, Judge Webster first denied defendant's motion for judgment notwithstanding the verdict. Later, defendant moved for new trial and upon considering that notice, the judge concluded that he had erred in refusing to enter judgment for defendant notwithstanding the verdict. Instead of granting a new trial, he thereupon set aside the jury's verdict and entered judgment for defendant. He did so because he concluded, and we agree, that plaintiff's right to sue defendant was barred by a prior election of an inconsistent remedy.

It will be recalled that in this suit plaintiff maintained, both in her declaration and in the above quoted pretrial statement, that she was entitled to the return of the $5,000 she had given defendant because the purchase for which it was to be used had not been consummated. However, prior to starting this law action, plaintiff had taken an entirely different position in connection with the same purchase

transaction in a chancery suit in the same court. By her voluntary participation in the chancery suit, in which it was decreed she had acquired a 1/2 interest in the Linc Inn tavern, Judge Webster correctly concluded that plaintiff was thereafter barred by such election of remedies from contending in this action that she was entitled to return of the purchase money because the purchase had not been completed.

The chancery suit, to which reference was made in the pretrial statement as quoted above and in which plaintiff intervened, was between one Pinter and Swanson and Sikora. Pinter held a chattel mortgage on the personalty of the Linc Inn and he had an agreement from Swanson and Sikora, chattel mortgagees, to reassign the liquor license to him upon default in payment of the sum secured by the mortgage. He was seeking enforcement in chancery of his rights under the mortgage and the agreement. Plaintiff Fitzgerald's sworn pleadings filed in the Pinter suit, included in this record on appeal, disclose that she then claimed, as she still does, that the $5,000 she gave defendant Bixler was to be applied to the purchase price of a 1/2 interest in the Linc Inn and she prayed for an adjudication in the Pinter suit of her interest in the tavern.

Both plaintiff and her husband worked at the tavern from at least January to June of the year in question. The payment to defendant was made in March and the business collapsed in June. The chancellor found that plaintiff Fitzgerald had succeeded to a 1/2 interest (Swanson's former share) in the tavern by purchase, as she claimed, and decreed that she and Sikora were entitled to all its assets after, however, specific performance of the Swanson-Sikora agreement to reassign the liquor license to Pinter. Unfortunately, the physical assets of the tavern had been sold at auction to pay tax obligations incurred during operation of the tavern,

thereby leaving nothing of value for plaintiff's interest. No appeal was taken from the chancellor's decree.

We have not found a similar case in our reports. However, there are many cases we consider somewhat analogous in which a vendor or vendee of land or personalty is required to make a choice between affirmance or disaffirmance of the transaction; he cannot choose both. See, generally, *Kefgen* v. *Coates,* 365 Mich 56; *Welling* v. *Dave's Cut Rate Drugs,* 362 Mich 389; *Beckley* v. *Cotton,* 352 Mich 19, and cases cited therein.

Plaintiff asserts here that the defense of election of remedies does not apply where a mistake in remedy has been made. But, the mistake made by plaintiff is not such as is referred to in the very cases cited by plaintiff. Among those cases are *McLaughlin* v. *Austin,* 104 Mich 489, and *Clements* v. *Constantine,* 344 Mich 446, in both of which the mistake referred to was a misconception of remedy in which recovery *could not be had* because legally the remedy did not exist. Here, the chancellor's decree gave plaintiff what she prayed. Her remedy in chancery was not inappropriate; that the remedy she legally achieved in chancery has proved of no value does not constitute a mistake relieving her of her election. See *Mertz* v. *Mertz,* 311 Mich 46.

Other claims made by plaintiff to escape the results of her election of remedies do not merit discussion. Because of our decision that plaintiff was thus barred from maintaining this suit, it is not necessary to consider the last question raised by plaintiff concerning the proofs.

Judgment below affirmed. Defendant may tax costs.

CARR, C. J., and KELLY, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred with SOURIS, J.

DETHMERS, J., concurred in the result.

BLACK, J. (*dissenting*). When this case was submitted (June 12, 1957) and decided (December 24, 1957), and when appellee's official motion for rehearing was denied (April 14, 1958), Justice SOURIS was not a member of the Court and so has no knowledge of what took place during extended oral argument on submission day. Two members of the Court repeatedly requested that appellee (a veteran practicing attorney) disclose where, either in the printed record or in the original record, the Court might find evidence that he, appellee (defendant below), actually did move for a directed verdict during trial of this jury case. Reasons for such procedural inquiry appear in the Empson act (CL 1948, § 691.691 *et seq.* [Stat Ann and Stat Ann 1959 Cum Supp § 27.1461 *et seq.*]); likewise in our former decision (*Fitzgerald* v. *Bixler,* 350 Mich 688).

Queried thus, appellee was unable to and did not furnish any record or other evidence of the fact of such a motion, and so came our unanimous conclusion (pp 690, 691): "We find that the record before us fails also to disclose that any motion for a directed verdict was made by the defendant during trial." That finding was and is concededly true in fact, and so the only question now is whether we are to change a decision, made on *the archived record every lawyer knows must be the sole basis for appellate decision* (see Court Rule No 65 [1945]*), because, years later, the same appellee brings to us a record tending—so far as its face is concerned—to contradict the men-

---

* The printed record in this case was filed December 19, 1956, prior to the effective date of the rule change. See 347 Mich xvii, xxxii.—REPORTER.

tioned, original record and our quoted finding as to the content thereof.

For myself, I own to some little suspicion of a hitherto mysterious record thus dug up and would extend it no useful verity, especially when a timely motion (see Court Rule 72, § 1 [1945]), made between submission and decision in 1957, could and should have brought that record up for scrutiny and possible order to correct diminution of the original record. I prefer instead to stand upon our choicelessly compulsory rule that cases must come to appellate determination exclusively upon original records, as this one did in 1957.

I would affirm reversal of this case. Most certainly costs should be denied any party who, strikingly as here, has failed without excuse to comply with our appellate rules.